The Honorable Judge John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL FIRE & MARINE INSURANCE COMPANY, a foreign insurer,

Plaintiff,

v.

NIGHTINGALE HEALTHCARE, LLC, a Washington Company d/b/a ARLINGTON HEALTH AND REHABILITATION; and DONALD STALLINGS,

Defendants.

DONALD STALLINGS,

Counterclaim Plaintiff,

v.

NATIONAL FIRE & MARINE INSURANCE COMPANY, a foreign insurer,

Counterclaim Defendant.

No.  2-25-cv-00751

**COUNTERCLAIM PLAINTIFF DONALD STALLINGS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF THE ENTIRE CLAIM FILE**

**NOTED ON MOTION CALENDAR: MAY 1, 2026**

## I.   ARGUMENT

**A.   MedPro Fails to Overcome the Presumption of No Attorney-Client Privilege.**

Under *Cedell v. Farmers Insurance Co. of Washington*, in cases alleging insurance bad faith, there is a "presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work

STALLINGS REPLY ISO MOTION TO COMPEL – 1
CASE NO. 2-25-cv-00751

FRIEDMAN | RUBIN PLLP
1109 First Avenue, Suite 501
Seattle WA  98101
(206) 501-4446

product privileges are generally not relevant." 176 Wn.2d 686, 698–99, 295 P.3d 239 (2013). To overcome this presumption, the insurer must show that "its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim." *Id.* at 699.

Even MedPro's cited cases acknowledge this. *See, e.g.*, *Young v. Safeco Ins. Co. of Am.*, No. C20-1816-LK, 2022 WL 1404650, at *1 (W.D. Wash. May 4, 2022) (unpublished) (applying the legal analysis set forth in *Cedell* regarding the attorney-client privilege); *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13–0611JLR, 2014 WL 2526901, at *6 (W.D. Wash. May 27, 2014) (unpublished) ("Therefore, in this case, the court and the parties are bound by Washington substantive law concerning the attorney-client privilege, including the Washington Supreme Court's pronouncements in *Cedell*.").

Even so, MedPro fails to make any showing to overcome the presumption that no attorney-client privilege exists. MedPro simply declares that "the withheld documents are privileged attorney/client communications between MedPro and its attorneys who are not involved in the adjustment of the claim against MedPro's insureds." Opp. at 4. But it gives no further explanation of this statement and cites nothing to support it. In fact, MedPro's supporting exhibits tend to rebut, rather than support, its claim. Among the redacted emails are unredacted portions where some of the attorneys in question are plainly communicating regarding the underlying lawsuit against Nightingale, MedPro's insured. *See* Decl. of Katherine M. Miller, Ex. 2 at MEDPRO_000648, 001572, 002323, Dkt-62-2.

MedPro does not even attempt to explain how the redacted portions—some of which are part of the same email as unredacted portions—are messages where "the attorney was providing counsel to the insurer and not engaged in a quasi-fiduciary function." *Cedell*, 176 Wn.2d at 700. Indeed, based on job title alone, most of these emails were authored by people whose primary or sole job responsibilities pertain to handling claims. Linda Graft and Matt Mains hold the title, "Claim Consultant, Senior Care Division." Supp. Decl. of Henry G. Jones, Ex. E at 4. Leah Nollenberger and Leticia Press hold the title, "Claim Division Manager, Senior Care." *Id.* David

STALLINGS REPLY ISO MOTION TO COMPEL – 2
CASE NO. 2-25-cv-00751

FRIEDMAN | RUBIN PLLP
1109 First Avenue, Suite 501
Seattle WA 98101
(206) 501-4446

Zielinski is Vice President of Claims. *Id.* Tellingly, MedPro immediately pivots to its work product doctrine arguments and never returns to address its claim of attorney-client privilege.

"The burden of establishing privilege rests upon the party asserting it." *Johnson v. Allstate Ins. Co.*, No. 2:11–cv–00927, 2012 WL 707160, at *1 (W.D. Wash. Mar. 5, 2012) (unpublished). Because MedPro fails to meet its burden here, its invocation of the attorney-client privilege must fail.

**B.    MedPro Fails to Show that the Redacted Emails Are Work Product.**

As a threshold matter, to qualify as work product, the documents in question must have been "prepared in anticipation of litigation or for trial." *See Shaterian v. Mapfre Ins. Co.*, No. 2:24-cv-01509-TL, 2025 WL 1592259, at *4–5 (W.D. Wash. Jun. 5, 2025) (unpublished) (finding that materials in the claim file that pre-date denial of the insured's claim do not qualify as work product). As MedPro notes, "Nightingale, MedPro, and defense counsel Heather Jensen were aligned on litigation strategy through trial. That alignment only changed after the jury reached an excess verdict on February 27, 2025 . . . ." Opp. at 2. The redacted emails in question were all authored and sent in 2023 or 2024 while Nightingale and MedPro were still in "alignment." *See* Decl. of Henry G. Jones, Ex. C, Dkt-59-3. There is no evidence, in other words, that these emails were being prepared and sent in anticipation of litigation or trial between MedPro and its insured. Consequently, the work product doctrine does not apply to these emails.

**C.    There Is a Compelling Need for the Full, Unredacted Claim File.**

Even if the redacted emails qualify as work product, they are discoverable here. MedPro does not dispute that *Holmgren v. State Farm Mutual Automobile Insurance Co.*, 976 F.2d 573 (9th Cir. 1992), supplies the relevant standard for discovery of work product in this case. Work product may be discovered "when mental impressions are *at issue* in a case and the need for the material is compelling." *Id.* at 577. The court in *Holmgren* found both elements met in the case before it. First, "[i]n a bad faith insurance claim settlement case, the 'strategy, mental impressions and opinions of [the insurer's] agents concerning the handling of the claim are directly at issue.'" *Id.* (quoting *Reavis v. Metropolitan Prop. & Liab. Ins. Co.*, 117 F.R.D. 160,

STALLINGS REPLY ISO MOTION TO COMPEL – 3
CASE NO. 2-25-cv-00751

164 (S.D. Cal. 1987)). Second, the court found the plaintiff's need "compelling" where Montana law permitted claims against an insurer for "bad faith in the settlement process" and the information was not available elsewhere. *Id.*

The same is true here. Mr. Stallings' counterclaims against MedPro all relate to MedPro's handling of Nightingale's claim in the underlying lawsuit. *See* Amended Answer, Counterclaims ¶¶ 97–123, Dkt-22. MedPro's conduct while investigating Nightingale's claim, the decisions it made in handling that claim, and its failure to settle within policy limits, which resulted in a jury verdict in excess of those limits, are all at issue in this case. Necessarily, the "strategy, mental impressions and opinions" of MedPro's agents in the claims handling process are directly at issue. There is no other source for obtaining this information than MedPro's claim file, and MedPro does not claim otherwise.

*Shaterian v. Mapfre Insurance Co.* is instructive on this point. Like Mr. Stallings here, the plaintiff in *Shaterian* moved to compel "the entire claim file" from the defendant insurer. 2025 WL 1592259, at *2. The defendant asserted the withheld portions of the claim file were work product. *See id.* at *5. In rejecting the argument, the court cited *Holmgren* and found that the two elements of its standard were met. *Id.* In addressing the plaintiff's compelling need, the court noted that "an insured's access to their insurer's claim file is crucial in a bad-faith case." *Id.* So it is here.

MedPro argues that the redacted emails concern "coverage" that occurred "within the first two months of the claim." Opp. at 6. MedPro further argues that these communications are therefore irrelevant because "MedPro confirmed coverage would be afforded to Nightingale" soon after the underlying lawsuit was filed. *Id.* It is untrue that these emails all occurred within the first two months of the claim. The earliest emails were sent in June 2023 and the latest were sent in August 2024. *See* Jones Decl., Ex. C, Dkt-59-3. They also remain relevant to assessing MedPro's handling of Nightingale's claim even if MedPro never disputed whether Nightingale would be covered under the Policy.

STALLINGS REPLY ISO MOTION TO COMPEL – 4
CASE NO. 2-25-cv-00751

FRIEDMAN | RUBIN PLLP
1109 FIRST AVENUE, SUITE 501
SEATTLE WA 98101
(206) 501-4446

One of the issues that arose during the underlying lawsuit was whether Nightingale's co-defendants, Clay & Davis Development, LLC and Clay Management Group, LLC (collectively, the "Clay Entities"), were also covered by MedPro under the Policy. *See* Supp. Jones Decl., Ex. F at MEDPRO_000595–97. MedPro repeatedly declined coverage for the Clay Entities. *See id.*, Ex. G at MEDPRO_000591–94, 000606–09, 001308–11, 001858–61, 002314–17. Nightingale maintained that the Clay Entities should be covered. *See id.*, Ex. H at MEDPRO_002332.

MedPro's declination of coverage affected its assessment and handling of Nightingale's claim. According to MedPro, only the Clay Entities could be held liable for violation of the Abuse of Vulnerable Adults Act, one of the claims alleged by Mr. Stallings in the underlying lawsuit. *See id.*, Ex. I at MEDPRO_002081. Because of this, MedPro believed the Clay Entities should share in paying any settlement rather than MedPro covering the full amount. *See id.* There was also plainly an incentive for MedPro to seek an outcome where liability might fall wholly on the Clay Entities, which, if MedPro's analysis were correct, would save MedPro its own funds. Yet pursuing such an outcome (or an outcome where the Clay Entities would contribute their own funds to a settlement) left Nightingale at risk of liability in excess of the Policy's limits which was realized here.

MedPro's mental impressions in assessing "coverage," whether of Nightingale or the Clay Entities, is therefore crucial to assessing whether it handled Nightingale's claim in bad faith. *See Palmer v. Sentinel Ins. Co. Ltd.*, No. C12-5444 BHS, 2013 WL 12124516, at *2 (W.D. Wash. Jul. 10, 2013) (unpublished) ("[C]ounsel's legal analysis and recommendations to the insurer regarding liability generally or coverage in particular will very likely implicate the work performed and information obtained in his or her quasi-fiduciary capacity.").

**D.      There Is a Reasonable Belief that Bad Faith Occurred to Justify *In Camera* Review.**

Because MedPro fails to overcome the presumption under *Cedell* that no attorney-client privilege exists, there is no need for this Court to reach the question of whether any privilege can be pierced. But should the Court reach the question, there is a sufficient basis to conduct an *in camera* review of the redacted emails. Under *Cedell*, if the presumption is overcome, *in camera*

STALLINGS REPLY ISO MOTION TO COMPEL – 5
CASE NO. 2-25-cv-00751

review is warranted if it is shown that "a reasonable person would have a reasonable belief that an act of bad faith has occurred." 176 Wn.2d at 700. That showing has been made here where, as discussed in the preceding section, MedPro's decision that the Clay Entities were ***not*** covered under the Policy created a situation where MedPro had incentives to shift financial responsibility to the Clay Entities at the risk of exposing its insured to liability in excess of the Policy's limits. The fact that MedPro repeatedly denied coverage to the Clay Entities while informing Nightingale that the Clay Entities should contribute to any settlement could create a reasonable belief in a reasonable person that MedPro was acting in bad faith. *In camera* review is therefore warranted.

MedPro's argument that this amounts to "speculation" of what the withheld materials "*might*" contain puts the cart before the horse. "The insured needs access to the insurer's file maintained for the insured in order to discover facts to support a claim of bad faith." *Cedell*, 176 Wn.2d at 696. Until Mr. Stallings obtains the full claim file, he can only speak to what "might" be in the portions that have been withheld. But his views on what "might" be in the claim file is reasonably based on the information available to him as explained above and supported by his cited exhibits. That is all that is required here.

## II.    CONCLUSION

The Court should grant Mr. Stallings's motion.

DATED this 30th day of April, 2026.

*I certify the memorandum contains 1,781 words, in compliance with the Local Civil Rules.*

FRIEDMAN | RUBIN PLLP

By:    s/ *Henry G. Jones*
Henry G. Jones, WSBA No. 45684
hjones@friedmanrubin.com
Ronald J. Park, WSBA No. 54372
rpark@friedmanrubin.com
Richard Dykstra, WSBA No. 5114
rdykstra@friedmanrubin.com
Richard H. Friedman, WSBA No. 30626
rfriedman@friedmanrubin.com

STALLINGS REPLY ISO MOTION TO COMPEL – 6
CASE NO. 2-25-cv-00751

FRIEDMAN | RUBIN PLLP
1109 First Avenue, Suite 501
Seattle WA 98101
(206) 501-4446

Rachel M. Luke, WSBA No. 42194
rachel@friedmanrubin.com
Friedman | Rubin, PLLP
1109 1st Avenue, Suite 501
Seattle WA 98101
Tel:  206-501-4446
Fax:  206-623-0794

SULLIVAN LAW GROUP, PLLC

Brian M. Sullivan, WSBA No. 38066
brian@sullivanpllc.com
David W. Duce, WSBA No. 15064
David@sullivanpllc.com
Sullivan Law Group, PLLC
2932 Hoyt Avenue
Everett, WA  98201
Tel: 425-322-1076
Fax: 425-609-3760

*Attorneys for Defendant and Counterclaim Plaintiff Donald Stallings*

STALLINGS REPLY ISO MOTION TO COMPEL – 7
CASE NO. 2-25-cv-00751

FRIEDMAN | RUBIN PLLP
1109 FIRST AVENUE, SUITE 501
SEATTLE WA  98101
(206) 501-4446

## CERTIFICATE OF SERVICE

The undersigned certifies under the penalty of perjury according to the laws of the State of Washington that on this date I caused the foregoing document to be served via the Court's CM/ECF system to the addresses listed below:

**COUNSEL NATIONAL FIRE & MARINE INSURANCE COMPANY:**

**Gordon Rees Scully Mansukhani**, 701 5th Ave., Ste. 2100, Seattle, WA  98104-7084
**Neal J. Philip,** WSBA No. 15554, nphilip@grsm.com
**Katharine Miller**, WSBA No. 57777, kmmiller@grsm.com
cc:    ktyson@grsm.com
       cmundy@grsm.com
       ddiaz@grsm.com

**COUNSEL FOR NIGHTINGALE HEALTHCARE LLC:**

**Corr Cronin, LLP**, 1015 Second Ave., Floor 10, Seattle, WA  98104
**Jack M. Lovejoy**, WSBA No. 36962, jlovejoy@corrcronin.com
**Jakob Goldfarb**, WSBA No. 62165, jgoldfarb@corrcronin.com
cc:    wcruz@corrcronin.com

DATED this 30th day of April, 2026.

_____
Jessica Vick, Paralegal
Friedman Rubin PLLP

STALLINGS REPLY ISO MOTION TO COMPEL – 8
CASE NO. 2-25-cv-00751

FRIEDMAN | RUBIN PLLP
1109 FIRST AVENUE, SUITE 501
SEATTLE WA  98101
(206) 501-4446