UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NIGHTINGALE HEALTHCARE LLC, a Washington Company doing business as Arlington Health and Rehabilitation; DONALD STALLINGS,<br><br>Defendants. | CASE NO. 2:25-cv-00751-JHC<br><br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on "Counterclaim Plaintiff Donald Stallings' Motion for Partial Summary Judgment on Declaratory Relief Claim/Counterclaim and Breach of Contract Counterclaim" (Dkt. # 31) and "Plaintiff National Fire & Marine Insurance Company's Cross Motion for Partial Summary Judgment Re: Breach of Contract" (Dkt. # 67). The Court has reviewed the materials filed in support of and in opposition to the motions, the record, and the governing law. Being fully advised, for the reasons below, the Court DENIES the motions.

## II
## BACKGROUND

This case is an insurance dispute arising out of a separate lawsuit in King County Superior Court. In the state court action, Counterclaim Plaintiff Donald Stallings sued multiple defendants, including Defendant Nightingale Healthcare, LLC, alleging negligence and violation of Washington State's Vulnerable Adult Statute. *See* Dkt. ## 31 at 4; 67 at 2; *see also* King County Superior Court, Case No. 23-2-10010-7 SEA. The case proceeded to trial in early 2025. *See id*. Nightingale's insurer—Plaintiff National Fire & Marine Insurance Company (MedPro)—provided Nightingale's defense at trial pursuant to Nightingale's insurance policies with MedPro. *See* Dkt. ## 31 at 4; 67 at 3.

As pertinent to this action, Nightingale's insurance policies with MedPro require MedPro to "pay on behalf of any insured all loss and claims expense" up to $2,000,000 per event, in addition to any post-judgment interest owed. *See* Dkt. ## 32-1 (Policy Number NSC100452) & 32-2 (Policy Number ENSC100452); *see also* Dkt. ## 68-1 (Policy Number NSC100452) & 68-2 (Policy Number ENSC100452). The policies also contain a variety of "conditions," including "Assistance and Cooperation" and "Non-Assignability" clauses that say the following:

> C. ASSISTANCE AND COOPERATION
>
> 1. After any claim is made, or any potential claim is first discovered, the insured shall not contract any expense, voluntarily assume any liability in any situation, nor make or contract any settlement of the claim or potential claim within the company's Limits of Liability, except at the insured's own cost and responsibility, without the written authorization of the company.
>
> 2. The company's duty to defend and pay loss for any claim or potential claim is strictly conditioned upon all insureds' cooperation with the company in the investigation, defense, and/or settlement of any matter to which this policy applies. Such cooperation shall include, but is not limited to: . . .
>
> d. doing nothing to prejudice the company's ability to investigate, defend, and/or manage any matter to which this policy applies; . . .

> N. NON-ASSIGNABILITY
>
> No interest of an insured under this policy shall be assignable without the prior written consent of the company. . . .

*Id*.

After a full jury trial on the merits, a King County Superior Court jury returned a verdict of $3,275,000 in favor of Mr. Stallings and against Nightingale, and judgment was entered on March 21, 2025. *See* Dkt. # 32-3 at 2. Around that same time, Nightingale, MedPro, and Mr. Stallings apparently communicated about whether MedPro would issue a blue-sky letter, whether Nightingale would authorize a settlement, and whether MedPro would participate in post-verdict settlement discussions. *See, e.g.*, Dkt. ## 31 at 4–5, 11; 41 at 5–6, 9; 46 at 2, 5–6. The parties dispute the precise contents of those communications. *See id.* But it is undisputed that on March 27, 2025, MedPro informed Nightingale that it would not be providing it with a blue-sky letter. *See* Dkt. # 33-2. It is also undisputed that on April 1, 2025, and without approval from MedPro, Nightingale and Mr. Stallings entered into a settlement agreement—the Agreement—in which Nightingale agreed to pay Mr. Stallings $4,200,000 plus post-judgment interest for his claims. *See* Dkt. ## 31 at 5; 67 at 3; *see also* Dkt. ## 32-4 & 68-6. The Agreement also assigned Nightingale's rights, privileges, claims, causes, and choices of action against MedPro to Mr. Stallings. *See id.*

After the Agreement was executed, Nightingale and Mr. Stallings jointly moved for a determination of reasonableness. *See* Dkt. # 31 at 5. A reasonableness hearing was scheduled, and MedPro was granted the opportunity to intervene, conduct discovery, and participate in the reasonableness hearing. *See* Dkt. # 32-5. The state court then entered the "Reasonableness Order," in which it made findings of fact, determined that the Agreement was reasonable, and entered a $4,200,000 judgment in favor of Mr. Stallings. *See* Dkt. # 32-6.

MedPro did not appeal the Reasonableness Order, nor did it make any payments to Mr. Stallings. *See* Dkt. # 31 at 6. Instead, MedPro filed the instant lawsuit for declaratory relief against Mr. Stallings and Nightingale, requesting that the Court: (1) declare that MedPro has no further duty to defend or indemnify Nightingale in the underlying lawsuit and Agreement; and (2) discharge MedPro of all further liability with respect to its defense and indemnity obligations under Policy Numbers NSC100452 & ENSC100452. Dkt. # 1 at 5–6. Mr. Stallings responded with an answer and various counterclaims, including a counterclaim for breach of contract. *See* Dkt. # 15.

Mr. Stallings and MedPro now cross move for partial summary judgment as to Mr. Stallings's breach of contract counterclaim. *See generally* Dkt. ## 31 & 67. Mr. Stallings requests that the Court declare that MedPro has breached its contractual obligations and enter partial judgment in his favor of $2 million plus post-judgment interest accruing on that amount. *See* Dkt. # 31 at 2. MedPro, in turn, requests that the Court deny Mr. Stallings's motion and instead, dismiss Mr. Stallings's breach of contract counterclaim because it fails as a matter of law. *See* Dkt. # 67 at 1–2.

## III
## DISCUSSION

A. Summary Judgment Standards

Summary judgment is appropriate if the evidence viewed in the light most favorable to the nonmoving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The party moving for summary judgment bears the initial burden of showing that there is no genuine dispute as to any material fact and that they are entitled to prevail as a matter of law on all claims for which they seek summary judgment. *See*

*id*. A fact is "material" if it "might affect the outcome of the suit[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is "genuine" if "there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *id.*).

If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in its favor. *See Celotex*, 477 U.S.at 324; *see also Anderson*, 477 U.S. at 250. Although a court must draw all "justifiable inferences" in favor of the nonmoving party, "[t]he mere existence of a scintilla of evidence . . . will be insufficient[,]" and missing facts will not be presumed. *Anderson*, 477 U.S. at 252, 255; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). If the nonmoving party does not meet its burden, the court must grant summary judgment to the movant. *See* Fed. R. Civ. P. 56(a).

B. Analysis

The parties raise a variety of arguments for why the Court should deny summary judgment to their opponent and grant summary judgment in their favor. *See generally* Dkt. ## 31, 41, 46, 67, 69, & 74. But a single factual issue precludes the Court from granting summary judgment to either party: there is a genuine dispute of fact as to whether MedPro was prejudiced by Nightingale's decision to enter the Agreement with Mr. Stallings on April 1, 2025.

Under Washington law, "[t]he interpretation of insurance policies is a question of law, and in construing the language of an insurance policy, a court must construe the entire contract together so as to give force and effect to each clause." *Pub. Util. Dist. No. 1 of Klickitat Cnty. v. Int'l Ins. Co.*, 124 Wash. 2d 789, 797, 881 P.2d 1020 (1994). "The insured bears the burden of showing that coverage exists; the insurer that an exclusion applies." *Mut. of Enumclaw v. T&G Constr.*, 165 Wn.2d 255, 268, 199 P.3d 376 (2008). When an insurer argues that they are not

required to provide coverage because the insured failed to comply with a condition precedent in the policy, such as a cooperation clause, a non-settlement clause, or a notice clause, the insurer will be relieved of their coverage obligations only if the insurer can show that they were "actually prejudiced by the insured's noncompliance with [the] conditions precedent[.]" *Pub. Util.*, 124 Wash. 2d at 804; *see also T&G*, 165 Wash. 2d at 269; *Oregon Auto. Ins. Co. v. Salzberg*, 85 Wash. 2d 372, 377, 535 P.2d 816 (1975).

"The insurer has the burden of proving that it has suffered prejudice from its insured's breach." *Tran v. State Farm Fire & Cas. Co.*, 136 Wash. 2d 214, 228, 961 P.2d 358 (1998). "Claims of actual prejudice require affirmative proof of an advantage lost or disadvantage suffered as a result of the breach, which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or liability." *Id.* (cleaned up and citations omitted). The issue of prejudice, however, is generally a question of fact and thus is rarely resolved on a motion for summary judgment. *See id.* ("[P]rejudice is an issue of fact and will seldom be established as a matter of law."); *see also Oregon Auto.*, 85 Wash. 2d at 377 ("[A]n alleged breach of a cooperation clause is generally a question for the trier of fact, unless, of course, there exists no genuine issue as to any material fact by virtue of the pleadings, affidavits, et cetera.").

Here, the parties have raised a genuine dispute regarding prejudice that is not resolved by the parties' conclusory statements. As for Mr. Stallings's Motion, it states that MedPro "cannot demonstrate any actual prejudice arising from Nightingale's entry into the Settlement Agreement on April 1, 2025" because: (1) MedPro received notice of the post-verdict settlement discussions and chose not to participate; (2) MedPro intervened and was heard at the reasonableness hearing; (3) at the time of settlement, Nightingale had a jury verdict of $3,275,000 pending against it from a trial in which MedPro had full control of Nightingale's defense; and (4) at the time of

settlement, MedPro had already expressly informed Nightingale that it would not be issuing a blue-sky letter. Dkt. # 31 at 11–12. But while all these facts speak to a lack of prejudice, none establish a lack of prejudice as a matter of law, as they ignore the fact that MedPro could have appealed the jury verdict as of April 1, 2025, and thus still had an opportunity to reduce the final award. And while the Court agrees with Mr. Stallings that such facts resemble the factual circumstances that led the Washington Supreme Court to find no prejudice as a matter of law in *T&G*, *see* Dkt. ## 46 at 6–8; 69 at 7–11, the Court does not find that the factual circumstances in both cases are so similar as to warrant deviation from the principle that prejudice is generally a question for the trier of fact under Washington law. *See Tran*, 136 Wash. 2d at 228; *Oregon Auto.*, 85 Wash. 2d at 377.

The Court also does not believe that MedPro's refusal to issue a blue-sky letter changes this outcome, as nothing in the text of the insurance policies seems to condition Nightingale's authority to settle without MedPro's consent on MedPro's refusal to issue a blue-sky letter. *See generally* Dkt. ## 32-1, 32-2, 68-1, & 68-2. Likewise, there does not seem to be anything in the Reasonableness Order that would require the Court to grant summary judgment to Mr. Stallings on this breach of contract counterclaim, as the Reasonableness Order addressed whether the settlement between Nightingale and Mr. Stallings was reasonable; it did not address whether MedPro was prejudiced by Nightingale's decision to enter the Agreement during the appeals period, thereby relieving MedPro of its coverage obligations vis a vis Nightingale.

As for MedPro's Motion, it states that "prejudice is clear: after the Assignment MedPro lost the ability to be involved in litigation strategy and the opportunity to pursue appellate remedies that could have reduced or eliminated its and Nightingale's exposure." Dkt. # 67 at 7. And while MedPro is correct that the right to an appeal is an important legal right and that MedPro *may have been* prejudiced by losing out on the opportunity to exercise that right,

MedPro has not established as a matter of law that it was *actually prejudiced* by losing its opportunity to appeal. *See generally id.* Accordingly, a genuine factual dispute remains concerning the issue of prejudice.

Because of this factual dispute regarding prejudice, the Court cannot determine as a matter of law whether MedPro was relieved of its coverage obligations as of April 1, 2025. Accordingly, the Court cannot grant summary judgment to either party on Mr. Stallings's breach of contract counterclaim.

## IV
## CONCLUSION

For these reasons, the Court:

(1) DENIES Counterclaim Plaintiff Donald Stallings's Motion for Partial Summary Judgment (Dkt. # 31); and

(2) DENIES Plaintiff National Fire & Marine Insurance Company's Cross-Motion for Partial Summary Judgment (Dkt. # 67).

Dated this 28th day of September, 2026.

John H. Chun
United States District Judge