UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATIONAL FIRE & MARINE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NIGHTINGALE HEALTHCARE LLC, a Washington Company doing business as Arlington Health and Rehabilitation; DONALD STALLINGS,<br><br>Defendants. | CASE NO. 2:25-cv-00751-JHC<br><br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Plaintiff National Fire & Marine Insurance Company's Motion to Exclude Defendants' Experts. Dkt. # 79. The Court has reviewed the materials filed in support of and in opposition to the motion, the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS IN PART and DENIES IN PART the motion.

## II
## DISCUSSION

Plaintiff requests that the Court exclude or strike the proffered expert testimony of Mary E. Owen and Robert B. Dietz under Federal Rules of Evidence 702 and 403, saying that: (1) Owen is not qualified as a claims handling expert; (2) the experts' opinions are unreliable; (3) the experts offer improper expert testimony; (4) Owen's supplemental report is not permitted; (5) Dietz's "Foundational Precepts" testimony is unhelpful to the jury; (6) the experts' testimony is duplicative; and (7) the experts' testimony carries an acute risk of unfair prejudice and misleading the jury. Dkt. # 79 at 6–12. The Court addresses each argument in turn below.

A. Owen's Qualifications

Plaintiff essentially characterizes Owen as an ultracrepidarian, contending that her "opinions should be stricken because she is an attorney who has no claims handling experience and is not qualified to testify as to the applicable standard of care." Dkt. # 79 at 10. The Court disagrees.

Federal Rule of Evidence 702 "requires that a testifying expert be 'qualified as an expert by knowledge, skill, experience, training, or education.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (quoting Fed. R. Evid. 702). Such rule "contemplates a broad conception of expert qualifications" and requires at least a "minimal foundation of knowledge, skill, and experience[.]" *Id.* at 1015–16 (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)) (emphasis omitted). Accordingly, courts regularly find that arguments about an expert's purported lack of specific expertise go to the weight, not admissibility, of their testimony.[1]

[1] *See, e.g.*, *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993) ("As the district court correctly noted, [the expert's] lack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert."); *Nay v. BNSF Ry. Co.*, 2021 WL 5321979, at *5

Here, it is undisputed that Owen is a licensed practicing attorney in Washington with over 35 years of experience in the field of insurance law. *See* Dkt. ## 84-2 at 2; 79 at 2. The record indicates that "[t]he proper handling of property and liability claims has been a major focus of [Owen's] practice[,]" and that she has helped to determine coverage, review cases involving bad faith claims, and advise claims departments on the proper handling of cases throughout her career. *See* Dkt. # 84-2 at 2. It also indicates that Owen has personally handled "hundreds of cases involving liability, damages and policy interpretation[,]" and overseen thousands more in her role as a supervisor. *See id.* Additionally, Owen has "provided hundreds of coverage opinions to insurers[,]" "represented insurers in cases in which coverage questions were being litigated[,]" and provided expert testimony on claim handling in numerous federal and state court actions. *See id.* at 2–11.

The Court thus finds Owen's experience and knowledge of claim-handling to be sufficient to qualify her as an expert in this case.[2] And so it denies Plaintiff's request to exclude or strike her testimony on this basis.

B. Reliability of Owen's Testimony

Plaintiff argues that Owen's expert opinions are unreliable because she "fail[s] to show how [her] experience informs [her] conclusions." Dkt. # 79 at 6. The Court disagrees.

Rule 702 tasks a district judge with ensuring that an expert's testimony is reliable. *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022). To determine reliability,

---

(W.D. Wash. Nov. 16, 2021) (rejecting the defendant's argument that the expert lacks specific expertise on the subject and finding the expert sufficiently qualified to testify); *McGee v. Zurich Am. Ins. Co.*, 2021 WL 6070590, at *6 (D. Ariz. Dec. 22, 2021) (same); *Fawcett v. Standard Fire Ins. Co.*, 2024 WL 4417279, at *1 (W.D. Wash. Oct. 4, 2024) (same).

[2] *See, e.g.*, *Fawcett*, 2024 WL 4417279, at *1 (concluding that Mary Owen is qualified "to testify as an expert as to proper claim-handling procedures" given her "years of experience in the relevant field"); *11333 Inc. v. Certain Underwriters at Lloyd's, London*, 261 F. Supp. 3d 1003, 1015 (D. Ariz. 2017) ("A witness's knowledge of a general professional field may qualify [them] to testify about a specific practice within that field.").

courts typically consider the *Daubert* factors—"1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–94 (1993)). Such factors, however, are not exhaustive and do not apply in every case. *See id.* at 1168; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). And courts have "broad latitude in determining whether an expert's testimony is reliable" and "in deciding *how* to determine the testimony's reliability." *Hangarter*, 373 F.3d at 1017 (quoting *Elsayed Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020)) (emphasis in original).

In the context of non-scientific and/or non-technical expert testimony, a court's reliability inquiry often focuses on whether the expert has sufficient personal knowledge or experience to support their opinions.[3] In such cases, the expert is generally obligated to explain "how [their] experience leads to the conclusion reached, why [their] experience is a sufficient basis for the opinion, and how [their] experience is reliably applied to the facts." Fed. R. Evid. 702, Advisory Committee's Notes to 2000 Amendments. But courts have rejected the notion that an expert's

---

[3] *See e.g.*, *Hangarter*, 373 F.3d at 1018 (concluding that "the district court did not abuse its discretion in finding [the expert's] testimony reliable based on his knowledge and experience"); *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1233 (9th Cir. 2017) (concluding that the district court "looked too narrowly at each individual consideration" and "improperly ignored the experts' experience," among other issues, and thus erred in excluding the expert's testimony); *Hankey*, 203 F.3d at 1169 (explaining that for non-scientific expert testimony, "reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it"); *United States v. Holguin*, 51 F.4th 841, 855 (9th Cir. 2022) (explaining that "[f]or some experts, the relevant reliability concerns may focus upon personal knowledge or experience[,]" with the court's inquiry covering "whether the expert's experience supports the expert's conclusions, whether the expert's reasoning is circular, speculative, or otherwise flawed, or whether the expert's reasoning is adequately explained") (internal quotation marks and citations omitted).

opinion is unreliable simply because the expert has not included an explicit statement to this effect in their report; instead, courts have found Rule 702 satisfied so long as there is an obvious connection or sufficient nexus between the expert's experience and knowledge and the report's opinions and conclusions.[4]

The Court believes that this is one of those scenarios. As stated by Owen in her initial report: "The opinions expressed in this report are based upon, and informed by, my review and analysis of the documentation provided, my direct and extensive knowledge of insurance claims handling, my experience in assisting and instructing upper level management of multiple insurers, my familiarity with insurance claims handling customs and practices in the insurance industry, my training and education, and, my knowledge of the regulatory standards imposed upon insurers in their handling of insurance claims in Washington and other states." Dkt. # 84-2 at 11; *see also id.* at 29. Accordingly, the "implication"—that Owen's personal knowledge and extensive experience in the field of insurance law inform her conclusions about whether MedPro complied with the applicable standard of care—"is obvious." *Franssen*, 2022 WL 10419015, at *4.

Additionally, Owen's initial report contains a significant discussion of what the industry standard is, with various references to legal materials and insurance publications. *See generally* Dkt. # 84-2. And contrary to Plaintiff's contention, *see* Dkt. # 88 at 3, the Court finds Owen's method to mirror the "clear, principled basis for identifying the applicable standard of care and

---

[4] *See e.g.*, *Franssen Condo. Ass'n of Apartment Owners v. Country Mut. Ins. Co.*, 2022 WL 10419015, at *4 (W.D. Wash. Oct. 18, 2022) (finding expert testimony reliable, even though the expert's "declaration does not provide the fullest explanation as to how he arrived at his opinions," because "his analysis—and experience supporting that analysis—is sufficiently apparent to permit [the court] to 'connect the dots'"); *Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.*, 927 F. Supp. 2d 1069, 1074–76 (D. Or. 2013) (rejecting the defendant's contention that the expert's testimony is unreliable because the expert "does not explain how her specialized knowledge and experience leads to her conclusions and how her experience has led her to understand and define what constitutes [the applicable standard]").

applying it to specific facts" that Plaintiff acknowledged is present in Defendants' cited cases.[5] The Court also notes that Plaintiff cites no case from the insurance industry where a court excluded an expert's opinions as unreliable where the expert relied solely or primarily on their experience and personal knowledge. *See generally* Dkt. ## 79 at 6–7; 88 at 3–4. Nor does Plaintiff identify any specific deficiencies with Owen's method; for example, an erroneous legal citation or a failure to apply the proposed standard of care to the facts of the case. *See id.*

Accordingly, the Court concludes that Defendants have established by a preponderance of the evidence that Owen's opinions rest on a reliable method, and so it denies Plaintiff's request to exclude or strike Owen's testimony on reliability grounds.

C. Reliability of Dietz's Testimony

Plaintiff argues that Dietz's opinions are unreliable because: (1) he "fail[s] to show how [his] experience informs [his] conclusions"; (2) his report contains multiple "copy-paste errors"; and (3) he has admitted that his opinions are based on an "incomplete factual basis." Dkt. # 79 at 6–7, 11–12. The Court agrees in part.

As stated by Dietz at the beginning of his report, "My assignment was to review the opinions of expert Stephen D. Johnson, and offer any rebuttal opinions." Dkt. # 83-2 at 2. He also states, in the "Listing of Material Sent For Review" section, that he "reviewed . . . Mr. Johnson's report." *Id.* at 7. Apart from these two references, however, Dietz's report does not

---

[5] *See e.g.*, *McGee*, 2021 WL 6070590, at *3–4 (concluding that the expert's opinions are reliable because the expert "has identified a specific standard of care, drawn from his years of experience in claims handling" and "reliably applied his proposed standard of care to the facts of this case"); *United States Fid. & Guar. Co. v. Ulbricht*, 576 F. Supp. 3d 850, 856–57 (W.D. Wash. 2021) (concluding that the expert's opinions are reliable based on his experience and knowledge and rejecting the defendants' argument that the expert has failed to reliably identify the applicable industry standards); *Hovenkotter v. Safeco Ins. Co. of Illinois*, 2011 WL 13193093, at *2 (W.D. Wash. Aug. 17, 2011) (concluding that certain expert opinions are reliable because they are "are based on [the expert's] experience in insurance claims handling applied to the specific facts of [the case]"); *Hangarter*, 373 F.3d at 1018 (affirming the district court's reliability finding based on the expert's knowledge and experience and the district court's pretrial probing into that knowledge and experience).

reference Mr. Johnson or his opinions. *See generally id.* Instead, it repeatedly refers to the report and opinions of a "Mr. Donald."[6]

At his deposition, Dietz confirmed that he was supposed to be rebutting the opinions of Mr. Johnson. *See* Dkt. # 83-3 at 7. He then stated that his use of the name "Donald" was a typo, and that he does not know why he put "Donald" instead of "Johnson" in the report. *See id.* at 9–10. He also affirmed that various other sections of the report—those that did not address his conclusions and rebuttal opinions—were copy and pasted from a previous report. *See id.* at 9.

Defendants now argue that such errors are harmless and at most go to the weight not the admissibility of Dietz's testimony. *See* Dkt. # 82 at 12. But such argument overlooks the fact that, prior to admitting Dietz's rebuttal testimony, the Court must first ensure that his opinions reliably rebut the opinions of Mr. Johnson.[7] Based on the contents of the report, however, the Court cannot determine whether Dietz's testimony actually addresses or rebuts Mr. Johnson's testimony.[8] It also cannot determine whether Dietz's opinions are the result of an independent evaluation of Mr. Johnson's opinions and/or a reliable application of Dietz's experience and personal knowledge to the specific facts of this case. And Defendants' more general

---

[6] *See, e.g.*, Dkt. # 83-2 at 17 ("For efficiency, I adopt the event time lines expressed in Mr. Donald's report."); *id.* at 18 ("Rebuttal Opinions Specific to expert Donald Regarding MedPro's Claims Handling"); *id.* at 21 ("Donald's opinion is a legal one involving the contract and the law.").

[7] *See Elosu*, 26 F.4th at 1020 ("District courts have a longstanding responsibility to screen expert testimony, and to prevent unfounded or unreliable opinions from contaminating a jury trial."); *see also Self v. Perspecta Enter. Sols., LLC*, 2023 WL 6020792, at *2 (S.D. Cal. Jan. 31, 2023) ("The court must carefully analyze the initial expert's proposed testimony and the corresponding expert's rebuttal testimony to determine the propriety of the rebuttal testimony.") (quoting *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 2016 WL 795888, at *1 (S.D. Cal. Mar. 1, 2016)); *Davis v. Clients on Demand, LLC*, 2025 WL 4649353, at *12 (C.D. Cal. Dec. 4, 2025), *reconsideration denied*, 2026 WL 712984 (C.D. Cal. Jan. 21, 2026) ("The Ninth Circuit has held that rebuttal experts are not rebuttal experts if the testimony they give does not address or rebut previously disclosed expert testimony.") (quoting *Stallworth v. Nike Retail Servs., Inc.*, 2021 WL 6618781, at *1 (C.D. Cal. Dec. 1, 2021)).

[8] Defendants also did not upload a copy of Mr. Johnson's report with their response. *See generally* Dkt. The Court is thus unable to evaluate whether Dietz's "Rebuttal Opinions Specific to expert Donald Regarding MedPro's Claims Handling" could reasonably be viewed as responsive to Mr. Johnson's opinions based on a comparison of the two reports.

suggestion—that it is Plaintiff's burden to unequivocally prove that Dietz's opinions are unreliable—fails to contend with the reality that it is *Defendants'* burden to prove reliability.[9]

The Court thus concludes that Defendants have not met their burden of establishing the reliability of Dietz's opinions, and so it grants Plaintiff's request and excludes Dietz's testimony under Rule 702.[10]

D. Improper Expert Testimony

Plaintiff contends that Owen offers improper expert testimony because her opinions: (1) are conclusory and unsupported by her methodology; (2) invade the province of the jury by offering opinions as to MedPro's intent, motive, and state of mind; (3) reflect an improper application of Washington insurance law; and (4) contain impermissible legal conclusions. *See* Dkt. # 79 at 6–9. Such arguments are not persuasive.

First, although Plaintiff questions the reliability of Owen's methodology and states that her opinions are "conclusory," *see id.* at 6–7, the motion contains no specific argument as to how her opinions are conclusory or unsupported. *See generally id.*; *see also* Dkt. # 88. Nor do the reports themselves appear to contain conclusory and unsupported opinions, especially in light of the Court's reliability finding in part II(B) above. *See generally* Dkt. ## 84-2, 84-3, & 84-4. Second, the Court disagrees with Plaintiff's assertion that Owen's reports opine on MedPro's

---

[9] *See* Fed. R. Evid. 702 (An expert "may testify in the form of an opinion or otherwise if the *proponent demonstrates* to the court that it is more likely than not that: . . . (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.") (emphasis added); *see also Doe v. Horne*, 2025 WL 1455708, at *6 (D. Ariz. May 21, 2025) ("The proponent of the expert testimony has the burden of proving its reliability by a preponderance of the evidence.").

[10] Because the Court is excluding Dietz's testimony for the reasons above, it need not reach the parties' arguments concerning the purportedly incomplete factual basis for Dietz's opinions. *See* Dkt. ## 79 at 12; 82 at 12–13; 88 at 4–5. It also need not address Plaintiff's other arguments for excluding or striking Dietz's testimony—the purported conclusory opinions, impermissible legal conclusions, unhelpful "Foundational Precepts," and "acute risk" of prejudice and jury confusion. *See* Dkt. # 79 at 6–9, 11.

intent, motive, or state of mind, *see* Dkt. # 79 at 8–9; when read in context, Owen's statements appear to simply describe her understanding of the effects of MedPro's actions. *See* Dkt. ## 84-2 at 22–23; 84-3 at 6; 84-4 at 3; *see also* Dkt. # 82 at 9–10. Third, Plaintiff conclusively states that "Owen improperly applies Washington insurance law[,]" but does not actually explain how. *See generally* Dkt. # 79 at 7–8. And fourth, Owen is an expert and thus is permitted to "refer to the law in expressing [her] opinion without that reference rendering [her] testimony inadmissible." *Hangarter*, 373 F.3d at 1017 (quoting *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988)). Courts have also concluded that experts in insurance cases may testify as to bad faith and discuss whether an insurer deviated from the industry standard, without such testimony constituting an improper legal conclusion. *See, e.g.*, *id.* at 1016–17 (rejecting the defendants' argument that the expert "inappropriately reached legal conclusions on the issue of bad faith and improperly instructed the jury on the applicable law"). The Court thus denies Plaintiff's request to exclude or strike Owen's testimony as improper on any of these grounds.

E. Owen's Supplemental Report

Plaintiff contends that Owen's Supplemental Report "is not permitted by the federal rules." Dkt. # 79 at 10; *see also* Dkt. # 88 at 6–7. The Court disagrees.

Under the federal rules, an expert witness "must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e), (a)(2)(E). "This duty, however, is not a right to supplement at will." *Millan v. Cardenas Mkts., Inc.*, 2017 WL 9435468, at *2 (D. Nev. Apr. 12, 2017). And a party "may not use a supplemental report to disclose information that should

have been disclosed in the initial expert report, thereby circumventing the requirement for a timely and complete expert witness report." *Id.*

Plaintiff contends that Owen's Supplemental Report should be stricken because it is "not based on newly discovered facts, documents, or testimony." Dkt. # 88 at 6. But at the outset of the Supplemental Report, Owen explicitly states that she is supplementing her previous opinions, as needed, based upon "the completion of additional depositions and the production of additional unredacted documents[.]" Dkt. # 84-4 at 2. And throughout the report, Owen cites, discusses, and specifically opines on certain documents and depositions that the Court presumes[11] were made available to Owen only after she completed her initial report. *See generally* Dkt. # 84-4. Based on the current record, then, Owen's Supplemental Report appears to be a valid supplementation of her initial opinions under Federal Rule of Civil Procedure 26, and so the Court denies Plaintiff's request to strike it.

F. Duplicative Testimony

Plaintiff contends that the Court should not allow both Dietz and Owen to testify because their opinions are duplicative. *See* Dkt. ## 79 at 9–10; 88 at 2–3. As such argument is rendered moot by the Court's exclusion of Dietz's testimony, *see* part II(C) above, the Court declines to address it.

---

[11] Neither party has specified when Owen received the "additional depositions" and "unredacted documents" referenced on page 1 of the Supplemental Report, or whether the documents and depositions cited throughout the report constitute this "newly-disclosed information." *See generally* Dkt. Plaintiff, however, does not argue that these depositions and documents were available to Owen before she completed her initial report. *See generally* Dkt. ## 79 & 88. Instead, Plaintiff merely alleges, without providing any details or evidence, that the "information" that Owen relied upon for the Supplemental Report "was known, available, and in the record before Owen prepared her initial report." Dkt. # 88 at 6. Without more, the Court thus presumes that the documents and depositions cited in Owen's Supplemental Report were produced to her after the initial report was completed.

G. Unfair Prejudice & Misleading the Jury

Plaintiff contends that "[e]ven if any part of Owen's . . . testimony survives [Rule] 702," her testimony should still be excluded or limited because it "carries an acute risk of misleading the jury and prejudicing the jury against MedPro." Dkt. # 79 at 9. The Court disagrees.

Under Federal Rule of Evidence 403, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The rule, however, "sets a high bar for exclusion[.]" *Sidibe v. Sutter Health*, 103 F.4th 675, 691 (9th Cir. 2024). And a court should exclude testimony only if the evidence's probative value is genuinely (and substantially) outweighed by one or more of the articulated dangers or considerations from the Rule. *See id.*; *see also Hankey*, 203 F.3d at 1172.

Here, Plaintiff's vague reference to "all the problems" identified in the motion, coupled with its conclusory statement that Owen's testimony risks misleading the jury and causing prejudice, simply does not meet the high bar for exclusion under Rule 403. So the Court denies Plaintiff's request to exclude or limit Owen's testimony on this basis.

## III
## CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion to Exclude Defendants' Experts (Dkt. # 79). The proffered expert testimony of Robert B. Dietz is hereby EXCLUDED under Federal Rule of Evidence 702. Plaintiff's motion is otherwise denied.

//

Dated this 23rd day of November, 2026.

John H. Chun
United States District Judge